UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                        :
THOMAS R. FLYNN, derivatively on behalf of              :
nominal defendant MOODY'S CORPORATION,                  :
                                                        :
                        Plaintiff,                      :
                                                        :
        -against-                                       :
                                                        :       08 Civ. 11059 (SHS)
RAYMOND W. MCDANIEL, JR; BASIL L.                       :
ANDERSON; ROBERT R. GLAUBER; EWALD                      :       OPINION & ORDER
KIST; CORNELIUS ALEXANDER                               :
MCGILLICUDY III; HENRY A. MCKINNELL, JR.;               :
NANCY S. NEWCOMB; JOHN K. WULFF;                        :
JOSEPH MCCABE; MICHAEL KANEF; LINDA                     :
S. HUBER; JOHN J. GOGGINS; BRIAN                        :
CLARKSON; ANDREW KIMBALL, and                           :
NOEL KIRNON,                                            :
                                                        :
                        Defendants,                     :
                                                        :
        -and-                                           :
                                                        :
MOODY'S CORPORATION,                                    :
                                                        :
                        Nominal Defendant.              :
                                                        :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

        This action raises solely state law claims of breach of fiduciary duties, gross

mismanagement, abuse of control, unjust enrichment, and constructive fraud.  It was

initially filed in New York State Supreme Court and was removed to this Court by

defendants pursuant to 28 U.S.C. § 1441.  Plaintiffs have now moved to remand this

action back to state court on the grounds that the amended complaint raises nothing but

state law claims and requires no construction or application of federal law.  Defendants

contend removal was proper because the amended complaint, while facially raising

nothing but state law claims, nonetheless poses "substantial federal questions" thus giving this Court original jurisdiction. See 28 U.S.C. § 1441(b).

Because the Court agrees that the amended complaint presents no federal question, the motion to remand this matter back to New York State Supreme Court, New York County, is granted.

## I.    BACKGROUND

Unless otherwise noted, the following facts are taken from the amended complaint and are presumed to be true:

### A.    The Parties

Plaintiffs Flynn, Brockton, and Herbert M. Stein, Jr., are, and were at all relevant times, shareholders in Moody's Corporation. (Am. Compl. ¶¶ 66-68.) Nominal defendant Moody's is a Delaware corporation with its principal place of business in New York. According to the complaint, the "lion's share" of Moody's business is the provision of credit ratings which is done through its credit ratings division, Moody's Investor Service. (Id. ¶¶ 27, 70.)

Defendants Raymond W. McDaniel, Basil L. Anderson, Robert R. Glauber, Ewald Kist, Cornelius Alexander McGillicuddy III, Henry A. McKinnell, Jr., Nancy S. Newcomb, and John K. Wulff were all directors of Moody's for all or part of the time relevant to the complaint and are referred to, at times, by the complaint as the "Director Defendants." (Id. ¶¶ 71-78, 86.) Defendants Joseph McCabe, Michael Kanef, Linda S. Huber, John J. Goggins, Brian Clarkson, Andrew Kimball, and Noel Kirnon were all high level Moody's executives. (Id. ¶¶ 79-85.)

B.  The Moody's Credit Rating Process

The complaint centers on alleged flaws in Moody's credit ratings process, and specifically, its process for rating "structured finance securities" such as Collateralized Debt Obligations ("CDOs") and Residential Mortgage-Backed Securities ("RMBS"). These securities, many of which were tied directly or indirectly to the housing market, posed far more significant risks than Moody's or its ratings suggested, and, when the housing market collapsed, the result was not only a massive market decline but, according to the complaint, a huge blow to Moody's reputation, and, by implication, its stock price and corporate value.  Indeed, as the complaint alleges in vivid, arguably purple, prose, because "Moody's [was] directly complicit in the greatest scam Wall Street has yet perpetrated on the world's financial markets," its reputation has been "tarnished . . . for the foreseeable future (if not irreparably)."  (Id. ¶ 4.)

According to the complaint, structured finance securities were rated by Moody's pursuant to the "Issuer Pays" model whereby the bank or issuer of the security would pay Moody's for the rating.  That model, the complaint contends, created an "inherent conflict of interest" because Moody's, rather than seeking to provide objective ratings, aimed to please the paying customer which wanted the strongest rating possible for the security it sought to issue. (Id. ¶¶ 46-48.)  Nevertheless, despite that conflict of interest, and despite the fact that defendants were operating in the "post-Enron world," defendants "failed to design and implement even the most basic system of internal controls that would address the endemic conflicts of interest inherent in Moody's business."  (Id. ¶ 18).

Moreover, according to the complaint, defendants then made significant misrepresentations to Moody's and the investing public regarding the internal policies that did exist, Moody's credit rating process more generally, and the risks that the structured finance securities business posed to Moody's in light of the impending economic downturn (Id. ¶¶ 157-231.)  The complaint additionally contends defendants breached their fiduciary duties to the companies in a series of additional respects, including by failing to follow their duty to "ensure that [Moody's] complied with its legal obligations . . . including . . . disseminating truthful and accurate information to shareholders, the investing public, and the SEC."  (Id. ¶ 304.)

According to the complaint, as a result of those failures, Moody's "over-rated" many structured finance securities, leading defendants to have to "downgrade" those ratings in 2007 and 2008 as the housing market began to collapse.  (Id. ¶¶ 237-257.) Those downgrades, in turn, led to a series of investigations by state and federal regulators along with a slew of negative publicity for the company.  As a result, the complaint contends, Moody's stock price declined from a high of $74.84 a share to $18 a share at the time this action was commenced.  (Id. ¶ 302.)

C.     This Action

This action originated as two separate state law suits initially filed in New York State Supreme Court in June and July of 2008.  The first, brought by the Brockton Contributory Retirement System derivatively on behalf of nominal defendant Moody's, alleged state law claims of breach of fiduciary duty, abuse of control, and unjust enrichment against various Moody's officers and directors named as defendants.  The second, brought by Thomas R. Flynn, asserted the same basic state law claims premised

on similar factual allegations.  On September 24, 2008, the two actions were

consolidated, and plaintiffs subsequently filed an amended complaint consolidating the

claims contained in each original complaint and adding additional claims.

The amended complaint sets forth eight causes of action, all brought pursuant to

New York state law.  Counts one through three allege breaches of fiduciary duties "in

connection with improper business practices," for "disseminating false and misleading

statements," and "for failing to oversee the company and maintain internal controls."  (Id.

¶¶ 311-23.)  Count four alleges unjust enrichment while counts five and six accuse all

defendants of "abuse of control" and "gross mismanagement" respectively.  (Id. ¶¶ 324-

336.)  Count seven, raised only against the director defendants, alleges breaches of duties

of loyalty and good faith in connection with the separation agreement defendant

Clarkson, the former President and Chief Operating Officer of Moody's, reached when he

"resign[ed]" in May 2008 at the height of the fallout from the misconduct alleged above.

(Id. ¶¶ 84, 337-40.)  Finally, count eight accuses all defendants of constructive fraud.  (Id.

¶¶ 341-45.)

On December 19, 2008, defendants removed this action to federal court

contending that the amended complaint raises substantial federal questions, thereby

triggering this Court's federal question jurisdiction.  Specifically, defendants argue that

plaintiffs' constructive fraud claim is a "disguised federal securities law claim" and that

one of plaintiffs' breach of fiduciary duty claims turns on "interpretation and application

of federal law."  (Defs.' Notice of Removal at 7-8.)  More generally, defendants contend

that several other actions brought by different plaintiffs are currently pending in federal

court and argue that those cases, which raise federal claims based on many of the same

factual allegations, are "virtually identical" to at least some of the state law claims raised here.  (Id. at 8.)

Plaintiffs contend the complaint raises nothing but state law claims and that, as a result, removal was improper.  Accordingly, they now seek remand back to New York State Supreme Court.

## II.    DISCUSSION

By statute, a state court defendant may remove to federal court any "civil action" over which a federal court has "original jurisdiction."  28 U.S.C. § 1441.  The removing party bears the burden of proving that it has met the requirements for removal.  Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004).  Accordingly, to establish that this action was properly removed, defendants must show that the action falls within either this Court's diversity jurisdiction or its federal question jurisdiction.

Absent diversity of citizenship—which no party suggests is present here—federal courts have original jurisdiction only over cases that present federal questions.  Fax Telecommunicacaciones, Inc. v. AT&T, 138 F.3d 479, 486 (2d Cir. 1998).  A federal question exists "only when a plaintiff's well-pleaded complaint raises issues of federal law."  Metro Life. Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).  Defendants do not dispute that the face of the complaint alleges only state law claims.  However, they contend that two of those claims—the constructive fraud claim and one of the breach of fiduciary duty claims—turn on the interpretation or application of federal law, thereby conferring federal question jurisdiction in this Court.

As a general rule, a plaintiff is the "master of the complaint" and is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also

available." <u>Finance & Trading, Ltd. v. Rhodia S.A.</u>, No. 04 Civ. 6083, 2004 U.S. Dist

LEXIS 24148, at *11 (S.D.N.Y. Nov. 30, 2004) (citing <u>Marcus v. AT&T Corp.</u>, 138 F.3d

46, 52 (2d Cir. 1998)); <u>see also</u> <u>Glazer Capital Mgmt., LP v. Elec. Clearing House, Inc.</u>,

09 Civ. 4207, 2009 U.S. Dist. LEXIS 121646, at *11-12 (S.D.N.Y. Nov. 23, 2009).

 However, the Second Circuit has made clear that a plaintiff may not purposefully

avoid removal "by framing in terms of state law a complaint the real nature of [which] is

federal," <u>Marcus</u>, 138 F.3d at 55, and has identified limited circumstances in which a

state law claim may nonetheless trigger a federal court's jurisdiction pursuant to 28

U.S.C. § 1331.  Notably, removal may be proper where "the state action simply provides

the vehicle for the vindication of rights . . . and relationships created by federal law."

<u>Donovan</u>, 106 F. Supp. 2d at 517 (quoting <u>W. 14th St. Commercial Corp. v. 5 West 14th

Owners Corp.</u>, 815 F.2d 188, 193 (2d Cir. 1987)).  In such cases, the critical question for

the court is whether the state law "cause of action poses a substantial federal question"

by, for example, requiring interpretation of federal law.  <u>D'Alessio v. N.Y. Stock Exch.,

Inc.</u>, 258 F.3d 93, 99 (2d Cir. 2001).

 Here, as noted, defendants contend that the complaint raises a "substantial federal

question" in two ways: first, plaintiffs' constructive fraud claim raises a "substantial

federal question" because it stems from the "same theory of 'fraud'" as the federal

securities fraud claims raised in other currently pending federal actions and relies on the

same "purported misstatements and omissions" as those that form the basis of the federal

claims.  (Defs.' Br. at 7.)  Second, defendants assert that one of plaintiffs' breach of

fiduciary duty claims—the claim that defendants failed to ensure that statements made by

Moody's to investors were truthful and accurate—"rests, in substantial part, on alleged

underlying violations of the federal securities laws."  (Defs.' Br. at 2.)

    Neither argument supports removal.  The complaint alleges nothing but classic

state law claims—in relevant part, claims of fraud and a breach of fiduciary duties

owed—which turn on duties and seek to vindicate rights created by New York law, in

essence "the right not to be lied to in a fashion that causes reliance and results in financial

injury, a right possessed by all New York residents."  Finance & Trading, 2004 U.S. Dist.

LEXIS 24148, at *21.  That plaintiffs' state law claims rest on the same "theory of fraud"

as federal securities claims brought by different plaintiffs in different actions is irrelevant

because it is well established that the mere fact that plaintiffs could have brought federal

securities law claims based on the factual allegations contained in the complaint is

insufficient to convert the state law claims into federal questions.  Id.; see also Marcus,

138 F.3d at 52; Glazer Capital Mgmt., 2009 U.S. Dist. LEXIS 121646, at *11-12.

    Nor can defendants establish that any of plaintiffs' claims requires construction or

interpretation of federal law.  As noted, both the fraud and breach of fiduciary duty

claims rest on duties created by state, not federal, law.  Defendants' contention that the

breach of fiduciary duty claims in particular stem from allegedly false or misleading

statements made in "SEC filings, press releases, conference calls and other public

documents" (Am. Compl. ¶ 317; Defs.' Mem. of Law at 9), is not itself sufficient to raise

a federal question because the fact "that the [allegedly false] statements were made in a

federally required document does not change the inquiry [into] whether, standing alone,

they were false or misleading . . . under state law."  Sung v. Wasserstein, No. 05 Civ.

5785, 2006 U.S. Dist. LEXIS 5785, at *35-36 (S.D.N.Y. Feb. 17, 2006).  See generally

<u>Merrell Dow Pharms., Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986 ) ("The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.").

Defendants' contend, alternatively, that an exception to the general rule applies where a state law claim "substantially mimics the language of a federal complaint already pending before the court." (Defs.' Br. at 7) (citing <u>In re: Nasdaq Market Makers Antitrust Litigation</u>, 929 F. Supp. 174 (S.D.N.Y. 1996)). As defendants would have it, because this complaint allegedly "mimics" the language and factual allegations of several federal actions already pending in the U.S. District Court for the Southern District of New York, this case should be accepted and consolidated.

Defendants provide no binding authority for such a proposition, relying instead on <u>In re: Nasdaq Market Makers Antitrust Litigation</u>, a single district court opinion in which another judge in this district, while overseeing a multi-district consolidated federal antitrust action, accepted as related a suit brought solely pursuant to Alabama state antitrust law. However, that court's decision to accept the state action was not premised simply on the similarity between the state law claims and the federal claims already before it, but instead on the finding of the Alabama Supreme Court that "[t]he federal statutes . . . prescribe the terms of unlawful monopolies and restraints of trade as they should also be administered in Alabama." <u>Id.</u> at 179. Adjudication of the state law claims, would thus necessarily require interpretation and application of federal law. Here, by contrast, it is well established the claims for fraud and breach of fiduciary duties turn exclusively on New York law and do not require interpretation or application of

federal securities law.  See Glazer Capital Mgmt., 2009 U.S. Dist. LEXIS 121646, at

*11-12; Finance & Trading, 2004 U.S. Dist. LEXIS 24148, at *21, 26 (collecting cases).

Accordingly, defendants fail to establish the presence of a federal claim or

substantial question that could support removal.  Plaintiffs are thus entitled to a remand

of this action back to New York State Supreme Court.

### III.    CONCLUSION

Because the Court finds that the amended complaint presents no federal question

and because defendants identify no other basis for invoking this Court's original

jurisdiction, the motion to remand this matter back to New York State Supreme Court,

New York County, is granted.


Dated:  New York, New York
        February 22, 2010


                                        SO ORDERED:

                                        _____
                                        Sidney H. Stein, U.S.D.J.

10